UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE L. COX,

        Case No. No.  19-13490

             Plaintiff,

        District Judge Stephanie Dawkins Davis

v.

        Magistrate Judge R. Steven Whalen

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Michelle L. Cox brings this action under 42 U.S.C. §405(g), challenging Defendant Commissioner's denial of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.   The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment  [ECF No. 17] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 13] be DENIED.

**I.  PROCEDURAL HISTORY**

On April 14, 2017, Plaintiff filed an application for SSI, alleging disability as of

January 10, 2017[1] ECF No. 9-5, PageID.236 (Tr. 201).[2] Upon the initial denial of the claim, she requested an administrative hearing, held on August 23, 2018 in Flint, Michigan (Tr. 34). Administrative Law Judge ("ALJ") Andrew Sloss presided. Plaintiff, represented by attorney Clifford Walkon, testified (Tr. 37-50), as did Vocational Expert ("VE") Heather Benton (Tr. 51-55). On November 29, 2018, ALJ Sloss determined that Plaintiff was not disabled at any time between March 27, 2017 and the date of the decision (Tr. 19-28). On October 4, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-4). Plaintiff filed her complaint in this Court on November 25, 2019.

## II. BACKGROUND FACTS

Plaintiff, born February 21, 1971, was 47 at the time of the ALJ's decision (Tr. 28, 201). She left school after Eighth Grade (Tr. 229). She worked previously as a fast food worker and waitress/bartender (Tr. 230). She alleges disability as a result of spinal stenosis, arthritis, Willis-Ekbom Disease, numbness, sciatica, bipolar disorder, depression, panic attacks, hypertension, Restless Leg Syndrome, fibromyalgia, vision loss seizures, and mild Chronic Obstructive Pulmonary Disease ("COPD")[3] (Tr. 228).

---

[1]Plaintiff later amended the alleged onset of disability date to August 30, 2017 (Tr. 15).

[2] References to the administrative transcript (ECF No. 9) are henceforth cited by transcript page number (Tr. xx).

[3]

Willis-Ekbom Disease is also known as restless leg syndrome. https://newsnetwork.mayoclinic.org/discussion /mayo-clinic-q-and-a-understanding-restless -legs-syndrome. (Last visited February 22, 2021).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony.

She did not hold a current driver's license (Tr. 37). Her past work included a position requiring the duties of a waitress, bartender, cook, and cleaner (Tr. 38). She was unable to work due to arthritis, fibromyalgia, sciatica, and concentrational problems (Tr. 38-39). She required the use of a cane for balance and a left wrist brace to avoid hand numbness (Tr. 39). She experienced intermittent pain of the back, joints, and feet (Tr. 39-40). She experienced difficulty bending (Tr. 40). On a scale of one to ten, she rated her pain as a six to seven (Tr. 40).

The condition of bipolar disorder caused concentrational problems (Tr. 40). She also experienced anxiety, panic attacks, and anger issues (Tr. 40). She received psychiatric treatment (Tr. 40). She experienced around three panic attacks a month lasting for 15 minutes (Tr. 40). She was able to prepare light meals and grocery shop on a biweekly basis (Tr. 41). She spent most of her waking hours watching television in a reclining position (Tr. 42).

In response to questioning by her attorney, Plaintiff reported that her lower back pain radiated into her thighs (Tr. 43). Her treatment for back pain included physical therapy, massage, and injections (Tr. 43). The conservative back treatment had not improved her condition (Tr. 44). Neck pain caused difficulty moving her head sideways (Tr. 44). Although she experienced bilateral upper extremity numbness, she did not use a right wrist brace due to the need to handle a cane (Tr. 44). She experienced gripping problems (Tr. 45). Her

-3-

previous left shoulder problems had subsided somewhat but she still experienced overhead reaching problems on the left (Tr. 45).

Plaintiff saw a mental health counselor semimonthly and a psychiatrist monthly (Tr. 46). She experienced the medication side effect of fatigue (Tr. 46). She also experienced anger management problems (Tr. 47). She required a cane for walking in her one-story home (Tr. 48). She was unable to sit or stand for more than 25 minutes or walk (with the cane) for more than half a block (Tr. 49). She was unable to lift more than three pounds (Tr. 49). She was able to perform personal care chores but sometimes neglected her appearance due to exertional and postural limitations (Tr. 50). She received "pain shots" from a podiatrist for arthritis of the bilateral feet (Tr. 50).

### B. Medical Records

### 1. The Treating Records[4]

January, 2017 podiatry records note Plaintiff's report of right heel pain (Tr. 529). She received an injection and was advised to take anti-inflammatories, use orthopedic devices, stretching, and icing (Tr. 529).

February, 2017 psychological treating records note Plaintiff's report that she and her boyfriend lived with his aunt who required constant "caregiving" (Tr. 779, 783-784, 786, 788). A February, 2017 endoscopy showed esophageal stricture and gastritis (Tr. 397). A CT

---

[4]

In an earlier application for benefits, Plaintiff was found not disabled through January 9, 2017 (Tr. 72-99). Records predating the alleged onset date (in this application) of January 10, 2017 have been review in full but are omitted from the present discussion.

of the neck from the same month was essentially unremarkable (Tr. 400, 410).  Treating records note prescriptions for hydrocodone, Welbutrin, and Zoloft (Tr. 404).  Bridget Ross noted that Plaintiff was currently being treated for chronic pain, back pain, chronic pharyngitis, and hypertension and was also seen by a neurologist and psychiatrist (Tr. 435).

In March, 2017, neurologist Nasser M. Sabbagh, M.D. opined that Plaintiff was limited to lifting two-and-a-half pounds and standing/walking less than two hours in an eight-hour workday (Tr. 433).  He found further that Plaintiff should avoid forceful pushing/pulling, bending, and stooping (Tr. 433).  He found that the limitations would be expected to last six months (Tr. 433).   Psychological treating records note diagnoses of bipolar disorder, depression, and anxiety with mood swings (Tr. 445).  Plaintiff denied hallucinations (Tr. 444).  Podiatry records note recommendations for continued conservative treatment (Tr. 530).  The same month, treating therapist Cortney Alvarez, LLPC opined that Plaintiff's "mental health symptoms make it hard for her to work due to her impulsive behaviors, anger, ability to sleep, and unstable moods" (Tr. 434).  Khaled M. Shukairy, M.D. examined Plaintiff the same month, noting the diagnosis of gastroesophageal reflux disease ("GERD") (Tr. 539).

April, 2017 records note chronic pain syndrome (Tr. 507).  Plaintiff appeared fully oriented with an appropriate mood and affect (Tr. 510).  The same month, Lori Thurman, TLLP completed a mental impairment questionnaire, opining that due to bipolar disorder, anxiety, and depression, Plaintiff would be expected to miss more than four days of work each month; be off task at least 20 percent of the workday; and had poor adaptation skills (Tr. 534).

She characterized Plaintiff as emotionally labile and paranoid with problems interacting with others (Tr. 535).   Podiatry records from the same month and July, 2017 through January, 2018 note a recommendation of continued conservative treatment for foot problems (Tr. 949-954).

In May, 2017, Dr. Sabbagh notes full strength in all extremities with a "steady" but narrow-based gait (Tr. 966).  He opined that fibromyalgia was Plaintiff's "main pathology" (Tr. 966).   In June, 2017, Dr. Shukairy removed vocal cord nodules and performed a septoplasty for the condition of a deviated septum (Tr. 550).  Physical therapy discharge records from the  same month note that the therapy goal of increased range of motion was partially met (Tr. 567).  Plaintiff reported that she was unable to stand for more than one hour at a time (Tr. 577).

In September, 2017, Dr. Sabbagh noted that an EMG of the upper extremities was normal (Tr. 967).  Plaintiff demonstrated full strength in all extremities (Tr. 967).  Dr. Sabbagh noted an antalgic gait and the diagnosis of fibromyalgia (Tr. 967).  He noted the absence of radiculopathy (Tr. 967).  September records note that Plaintiff was discharged in the past by several doctors for the misuse of opiates (Tr. 916, 920).  October, 2017 physical therapy records note improvements in mobility and reduced pain (Tr. 699, 708).  Counseling records state that Plaintiff drove her boyfriend's aunt to the doctor (Tr. 826).  The following month, Dr. Sabbagh, M.D. completed a medical questionnaire, opining that due to pain and weakness, Plaintiff was limited to lifting 30 pounds occasionally and 15 frequently, and

walking/standing for four hours in an eight-hour workday (Tr. 663-664).  He found no limitations in sitting (Tr. 664).  He found that Plaintiff would require one to two unscheduled ten-minute work breaks every day lasting for at least a total of half an hour every day (Tr. 664).  He found no manipulative limitations but found that Plaintiff was limited to turning her head occasionally with only "rare" postural activity (Tr. 664-665).  The same month, Plaintiff reported back pain radiating into the lower extremities (Tr. 901).

December, 2017 discharge records note  improved strength, range of motion, and pain but that the therapy was discontinued due to her failure to attend multiple sessions (Tr. 764). The same month, Dr. Sabbagh observed full strength in all extremities and a steady gait (Tr. 968).

In January, 2018, Janice Neely Mall, PC completed a mental impairment questionnaire, opining that Plaintiff would be expected to miss more than four days of work each month and would be off task at least 20 percent of the workday due to psychological symptoms (Tr. 770, 858).  She noted that psychological symptoms of extreme mood swings, anxiety, anger, and sleep disturbances (Tr. 771).  Counseling records from the same month note that Plaintiff was neatly dressed and groomed with full orientation (Tr. 818).  Plaintiff reported situational stressors (Tr. 820).  An MRI of the lumbar spine from the same month showed a small disc protrusion at L5-S1 and a disc protrusion at L4-L5 with moderate to severe foraminal stenosis (Tr. 775).  Plaintiff reported that the lumbar spine pain was stable (Tr. 882).  In March, 2018, Dr. Sabbagh observed a steady gait and found that Plaintiff

exhibited full strength "when encouraged" (Tr. 969).

May, 2018 physical treating records note that Plaintiff was fully oriented but appeared anxious and depressed (Tr. 867). Dr. Sabbagh's June, 2018 records note a steady gait, full orientation, and full muscle strength (Tr. 970).

### 2. The Non-Treating Records

In June, 2017, Reuben Henderson, D.O. found that Plaintiff could lift/carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 112). He limited Plaintiff to occasional climbing or ramps/stairs and balancing (Tr. 113).

In August, 2017, Harold Sommerschield, Ph.D. performed a consultative psychological evaluation, noting Plaintiff's report of long-term panic attacks, anger management problems, concentrational problems, and depression (Tr. 638-640). Plaintiff reported chronic back pain. extremity numbness, and restless leg syndrome (Tr. 638-639).

Dr. Sommerschield opined that Plaintiff was exaggerating her pain (Tr. 641). Plaintiff appeared fully oriented (Tr. 642). Dr. Sommerschield opined that Plaintiff's psychological diagnoses "should respond well to medication and treatment" (Tr. 643). He reiterated his belief that Plaintiff exaggerated her degree of pain (Tr. 643). He concluded that Plaintiff was:

> [C]apable of understanding and remembering instructions, locations and work-like procedures. From an intellectual and psychological perspective, [she] can concentrate and persist sufficiently to carry out instructions and sustain a normal work routine. She can interact appropriately with co-workers and supervision. She can adhere to basic standards of neatness and cleanliness, if she were to choose to do so. I believe she might have some difficulty making

-8-

adaptations to some physical changes in a work environment (Tr. 643-644).

The same month, Rom Kriauciunas, Ph.D. performed a non-examining review of the treating and consultative records, finding mild limitation in understanding, remembering, or applying information and moderate limitation in interacting with others; concentration, persistence, or pace; and adaptation (Tr. 110). He found that Plaintiff was capable of understanding and remembering instructions, locations, and work-like procedures," "interacting appropriately" with co-workers and supervisors, and "adhere to basic standards of neatness and cleanliness" with "some difficulty making adaptations to some physical changes in a work environment" (Tr. 108).

### C. Vocational Testimony

VE Heather Benton classified Plaintiff's past work as a fast food work as exertionally light and unskilled and work as a waitress light/semiskilled[5] (Tr. 51, 314). ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

[L]ight work as defined by the regulations, except she can occasionally

---

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

climb ramps or stairs and can occasionally balance. She can perform
simple, routine tasks and work that has only occasional changes in the
work setting and that involves only occasional interaction with others,
would there be -- first of all, could she perform her past job? (Tr. 51).

The VE testified that the above limitations precluded Plaintiff's past relevant work but

allowed for the exertionally light, unskilled work of a housekeeper (400,000 positions in

the national economy); stock clerk (230,000); and office clerk (190,000) (Tr. 51). She

testified that the additional restriction of a limitation to four hours walking in an eight-hour

day would eliminate the housekeeping position and the stock clerk and office clerk

numbers would be reduced to 80,000 and 70,000 respectively (Tr. 51-52). She testified

that the walking limitations would also allow for an administrative support position

(15,000) (Tr. 52). She testified further that employers allowed 15-minute breaks in the

morning and afternoon and a 30 to 60-minutes lunch break and up to one unscheduled

absence each month (Tr. 52). She stated that her testimony was consistent with the

information found in the *Dictionary of Occupational Titles* ("*DOT*") and her own

professional experience (Tr. 52).

In response to questioning by Plaintiff's attorney, the VE stated that the stock clerk,

office clerk, and administrative support positions would allow for a sit/stand option (Tr.

53). She stated that the need for a cane while standing and walking would reduce the job

numbers to 50,000, 60,000, and 10,000 respectively (Tr. 53). She stated that a limitation

to occasional handling and fingering would reduce of all the above-stated jobs (Tr. 54).

She stated that a limitation to moving the head in any direction to an occasional basis

would eliminate the housekeeping position (Tr. 55).  Finally, she testified that the need to be off task 20 percent of the workday would preclude all competitive employment (Tr. 55).

### D.   The ALJ's Determination

Citing the medical transcript, ALJ Sloss found that Plaintiff experienced the severe impairments of "degenerative disc disease; bipolar disorder []; anxiety disorder []; and borderline personality disorder" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-22).  He found that the conditions of hypertension and obesity, while supported by diagnoses, did not cause more than minimal work-related limitations (Tr. 22).

The ALJ found that Plaintiff experienced  moderate limitation in interacting with others; concentration, persistence, or pace; and adaptation (Tr. 22-23).  He found mild limitation in understanding, remembering, or applying information  (Tr. 22).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional restrictions:

> [S]he [is] limited to a maximum of four hours standing and walking and can occasionally climb ramps or stairs, and occasionally balance.  She can perform simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with others (Tr. 23).

Citing the VE's testimony (Tr. 55), the ALJ determined that Plaintiff could perform the jobs of administrative support worker, stock clerk, and office clerk (Tr. 27, 51-52).

The ALJ rejected Plaintiff's professed degree of physical and mental limitation (Tr.

24-25). He cited normal EMG studies and an MRI of the lumbar spine showing moderate to severe stenosis at L4-L5 but otherwise unremarkable findings (Tr. 24). He noted that Plaintiff demonstrated a normal gait on multiple occasions (Tr. 24). She rejected Dr. Sabbagh's finding that Plaintiff could not walk more than two hours a day, noting that "Dr. Sabbagh did not offer supporting explanations and it was clear that the restriction was temporary" (Tr. 25).

Regarding the alleged psychological limitations, the ALJ cited therapy records stating that Plaintiff was responsible for the 24-hour care of her aunt (Tr. 25). He noted that a mental status exam showed anxiety and depression but was otherwise normal (Tr. 25). The ALJ rejected psychologist Thurman's opinion of disability, noting that Thurman was not an acceptable medical source and that the record did not support the finding that Plaintiff would be absent multiple times a month (Tr. 25-26).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).  However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V. ANALYSIS

Plaintiff makes four arguments in support of remand, contending first that the ALJ erred at Step Two of the sequential analysis by declining to include the condition of obesity among the severe impairments. *Plaintiff's Brief,* ECF No. 13, PageID.1031. Second, she contends that the ALJ failed to address the conditions of bursitis, plantar fasciitis, or fibromyalgia in crafting the RFC for light work. *Id.* at 1035. Third, she argues that the ALJ did not provide a cogent explanation for rejecting a portion of Dr. Sabbagh's treating assessments. *Id.* at 1037. She points out that Dr. Sabbagh's opinion that she would miss more than four days of work each month is also supported by counselor Neely's and psychologist Lori Thurman's opinions. *Id.* at 1038-1039. Last, Plaintiff argues that the VE's

job findings did not take into account her eighth grade ("limited") education.  *Id.* at 1041.

## A.  Obesity

At Step Two of the sequential analysis, the ALJ found that the condition of obesity did not create significant work-related limitation (Tr. 22).  He noted that the treating source advice was limited to the conservative recommendation to "watch her diet and try to lose weight" (Tr. 22).

In the instance that a claimant is found to be obese, the Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities. SSR 02–1p, 2002 WL 34686281, at *3 (June 21, 2002). However, when determining the impact upon an individual's ability to function, SSR 02–1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009).  SSR 02-1p "does not impose any type of separate procedure that an administrative law judge must follow.  Instead, a judge should simply consider a claimant's obesity in combination with other impairments when proceeding through the normal five-step disability analysis."  *Stewart v Comm'r of Soc Sec*, 811 Fed Appx 349, 354 (6th Cir. May 5, 2020)(internal citations and punctuation omitted).

It is undisputed that Plaintiff experienced the condition of obesity.  However, contrary to Plaintiff's argument, the ALJ not only considered the obesity but stated that the condition did not result in significant work-related limitations (Tr. 22).  He noted that an exclusively

conservative approach was recommended by Plaintiff's treating sources.  My own review shows that none of the treating or examining sources proposed more aggressive treatment such as surgery or inpatient treatment.   *See Ramirez v Comm'r of Soc Sec,* 2019 WL 5802512, at *19 (N.D. Ohio, June 19, 2019)("[T]reatment notes indicating that Ramirez could control her obesity symptoms through diet and exercise" permissibly cited to discount professed limitations), report and recommendation adopted , 2019 WL 4593528 (ND Ohio, September 23, 2019).  As discussed in more detail below, treating source Dr. Sabbagh found that the condition would not prevent standing/walking for up to four hours in an eight-hour workday; that Plaintiff exhibited a normal gait and strength; and that she reported that her daily activities included caring for her boyfriend's aunt.   Because the ALJ's finding that obesity was non-severe is well supported and adequately explained, a remand on this basis is not warranted.

### B.  The RFC

Plaintiff argues second that RFC for a range of light work crafted by the ALJ did not account for her limitations resulting from  bursitis, plantar fasciitis, or fibromyalgia.

An RFC describes an individual's residual abilities. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once [his] limitations have been taken into account" *Id.* (*quoting* 20 C.F.R. § 416.945).   In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. §§

404.1545(a)(1); 416.945 (RFC must be based on all "relevant evidence"). The ALJ must consider the alleged physical, mental, and environmental restrictions in crafting the RFC. §§ 404.1545(b-d); 416.945.  It is well settled that an ALJ is permitted to draw from the record as a whole in crafting the RFC. *Rudd v. Comm'r of Soc. Sec*., 531 F. App'x 719, 727-728 (6th Cir. September 5, 2013)(rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record").

 As a threshold matter, the ALJ acknowledged Plaintiff's allegations of fibromyalgia and lower extremity problems among "the litany of impairments" limiting her ability to work (Tr. 24).  However, the finding that fibromyalgia is a medically determinable impairment (much less that the condition is disabling) must be first supported by a diagnosis by an acceptable medical source and supported by evidence of "[a] history of widespread pain," [a]t least 11 positive tender points on physical examination," *and* "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012).  Alternatively, a diagnosis of fibromyalgia can be supported by "[a] history of widespread pain," [r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems . . . waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; *and* "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

 Plaintiff does not cite any evidence to show that she met the diagnostic criteria

required to show that fibromyalgia was a medically determinable impairment.   While neurologists Dr. Sabbagh noted a diagnosis of fibromyalgia during the relative period, his treating records do not indicate that Plaintiff met the criteria for a finding that fibromyalgia was a medically determinable impairment under SSR 12-2p.  Dr. Sabbagh's records created in the year preceding the relevant period do not meet the criteria for fibromyalgia. In January, 2016, he noted, "I tend to think that her now almost diffuse achiness is more related to fibromyalgia" (Tr. 325) and August, 2016, noting that while complaints were "reminiscent of fibromyalgia, he had not excluded other conditions (Tr. 327).  While Dr. Sabbagh refers to Plaintiff's "fibromyalgia" in October, 2016 through September, 2017, his finding is unaccompanied by any indication that she met the criteria set forth in SSR 12-2p (Tr. 330-331, 967).  Notably, in December, 2017, Dr. Sabbagh referenced "diffuse pain suggestive of fibromyalgia maybe with superimposed degenerative arthritis," but again provided no evidence to show that she met the diagnostic criteria (Tr. 968).

As to the foot conditions, the transcript shows that Plaintiff sought treatment for plantar fasciitis and bursitis regularly between June, 2017 and February, 2018 (Tr. 529, 949-950, 952-955, 957-959). However, the records show that Plaintiff's treatment was exclusively conservative and that the condition could be addressed with orthopedic devices, stretching, anti-inflammatories, and icing.  None of the records suggest that Plaintiff required surgery during the relevant period.  Further, while Plaintiff's alleged walking limitations due to a lumber spine condition, fibromyalgia, or the foot conditions, the ALJ noted that the treating

-18-

records repeatedly showed a normal gait and full muscle strength (Tr. 24, 966, 968, 969-970).

Because substantial evidence supports the ALJ's finding that Plaintiff could stand or walk

four hours a day, the omission of further discussion regarding the foot problems or allegations

of fibromyalgia does not constitute error.  *See Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x

496, 508, 2006 WL 305648 (6th Cir. February 9, 2006)(" ALJ can consider all evidence

without directly addressing in his written decision every piece of evidence submitted by a

party").

### C.  The Treating Medical Sources

Plaintiff takes issue with the ALJ's partial adoption of Dr. Sabbagh's November, 2017

assessment of her work-related abilities. ECF No. 13,PageID.1037.  She argues that the ALJ

erred by adopting Dr. Sabbagh's finding that Plaintiff was limited to standing/walking for six

hours a day but rejecting his additional finding that she would be absent from work more than

four days of every month.  *Id.* (*Citing* Tr. 25, 664-665).  Plaintiff also faults the ALJ for

discounting counselor Neely's finding of disabling psychological limitation, arguing that the

ALJ "failed to point to any evidence in the record which would contradict the statement of

the treating source." *Id.* at 1039.  Finally, Plaintiff  disputes the rejection of psychologist

Thurman's finding of disabling psychological limitation on the basis that Thurman was not

an acceptable medical source.  *Id.* at 1039-1040.

For claims made on or after March 27, 2017, the ALJ will weigh both treating and

non-treating medical evaluations by acceptable medical sources based on how well they are

supported by the remainder of the record. 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c( C ). ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to [] explain" the consideration given to the remaining factors. §§ 404.1520c(b)(2); 416.920c(b)(2).

In November, 2017, Dr. Sabbagh found that Plaintiff was limited to lifting 30 pounds occasionally and 15 frequently and walking/standing for four hours in an eight-hour workday (Tr. 663-664).  He found no limitations in sitting (Tr. 664).  He found that Plaintiff would require one to two unscheduled ten-minute work breaks every day lasting for at least a total of half an hour every day[6] (Tr. 664).  He found no manipulative limitations but found that Plaintiff was limited to turning her head occasionally with only "rare" postural activity (Tr. 664-665).  He found that Plaintiff would miss more than four days of work each month (Tr.

---

[6]Dr. Sabbagh issued an earlier assessment in March, 2017 but noted that the limitation therein would not be expected to last more than six months (Tr. 433).

664).  The ALJ adopted the finding that Plaintiff was limited to standing/walking four hours in an eight-hour day, citing the imaging studies of the lumbar spine and one treating record showing an antalgic gait (Tr. 25).  In contrast, the ALJ rejected the finding that Plaintiff would miss more than four days of work each month, noting that it was "not supported by or consistent with the medical evidence of record" (Tr. 25).

The ALJ's partial rejection of Dr. Sabbagh's opinion and other treating source opinion of disabling limitation is generously supported by the record and well explained.  The ALJ noted that objective studies made in the year before the alleged onset of disability were deemed "not significant" by treating sources (Tr. 24).  He acknowledged the disc protrusions of the lumbar spine, but noted that the absence of motor deficit and that "overall," Plaintiff's gait was normal (Tr. 24).  He cited Dr. Sommerschield's observation that Plaintiff was not in discomfort during the consultative examination (Tr. 25).  The ALJ also noted that the psychological counseling records undermined Plaintiff's claims of disabling physical limitation, noting that Plaintiff's daily activities included caring for the physical needs of her boyfriend's aunt on a "24/7" basis (Tr. 25).

The ALJ's partial rejection of Dr. Sabbagh's opinion and the opinions of Plaintiff's mental health counselors are supported by my own review of the record showing a normal gait, consistently full muscle strength in all extremities, and full orientation (Tr. 966-968).  A CT of the neck was unremarkable (Tr. 400, 410).  In February, 2017, Plaintiff reported that she was responsible for looking after her boyfriend's aunt who required constant "caregiving"

-21-

(Tr. 779, 783-784, 786, 788).  With nothing more, Plaintiff's ability to be "on call" 24 hours a day to assist with an invalid's physical needs undermines her claim that she would be required to miss at least four days of work each month or was incapable of the physical and psychological requirements of full-time, unskilled work (Tr. 25).  Other records showing that Plaintiff accompanied the aunt to doctors' appointments also support the finding that she possessed the psychological ability to carry out routine, unskilled work (Tr. 826).  Dr. Sommerschield's observation that Plaintiff was fully oriented, would respond well to "medication and treatment," and was exaggerating her pain also supports the ALJ's partial rejection of Dr. Sabbagh's assessment  (Tr. 641, 643).

Plaintiff's argument that psychologist Thurman's opinion was erroneously rejected on the basis that she was not an "acceptable medical source" is not well taken.  Plaintiff notes that Thurman's title of Temporary Limited Licensed Psychologist ("TLLP"), under the supervision of a fully licensed psychologist, qualifies her as "licensed psychologist" and thus, an acceptable medical source under § 416.902(a)(2). ECF No. 13, PageID.1040.  However, Defendant correctly notes that because Thurman was required to be under the supervision of a fully licensed psychologist, she was not "'at the independent practice level'" required for an acceptable medical source. *Defendant's Brief,* ECF No. 17, PageID.1069 (*quoting Fang Liu v. Comm'r of Soc. Sec.*, 2020 WL 2733868, at *10 (E.D. Mich. May 26, 2020))(Borman, J.)("temporary limited psychologists are not acceptable medical sources because they are not licensed or certified psychologists at the independent practice

level")(internal citations omitted).  As such, the ALJ did not err in finding that Thurman was not an acceptable medical source.  On a related note, Plaintiff contends that an SSA field officer's observation that Plaintiff appeared disorganized ought to have been discussed in the administrative opinion.  ECF No. 13, PageID.1040 (*citing* Tr. 226).  However, in support of this argument, she cites SSR 16-3p which requires only that the ALJ "consider" agency personnel statements, not discuss them.  2017 WL 5180304, at *6 (October 25, 2017).  Thus, the ALJ did not err in declining to discuss the field officer's observations.

### D.  The Step Five Findings

In her final argument, Plaintiff argues that the VE's job findings do not reflect her eighth-grade education, noting that the positions of administrative support worker, stock clerk, and office clerk, as stated in a companion publication to the *DOT*, generally require a high school diploma or GED.  ECF No.13, PageID.1042.  Citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), she argues that the ALJ erred by not conducting a rigorous inquiry into whether the VE's job testimony was consistent with the information found in the *DOT*. *Id.* at 1043.

This argument fails for a number of reasons.  First, the ALJ asked if the vocational testimony was consistent with the *DOT*, to which the VE responded "yes" (Tr. 53).  The ALJ was not required to conduct a more rigorous inquiry into whether the job findings conflicted with the *DOT. See Lee v. Comm'r of Soc. Sec.*, 529 Fed.Appx. 706, 715, 2013 WL 3388486 (6th Cir. July 9, 2013)(*citing Kyle v Comm'r of Soc. Sec*, 609 F3d 847, 858

(6th Cir. 2010)("the ALJ asked the VE if her testimony was consistent with the Dictionary, and she answered that it was. This effectively satisfied the Commissioner's burden").

Second, the ALJ asked the VE to consider Plaintiff's education level in describing a hypothetical individual and there is no indication that the VE did not consider Plaintiff's limited education in making the findings (Tr. 51). Three, the applicable regulation makes clear that a limited education does not prevent a claimant from doing unskilled work, but rather, would generally preclude semiskilled or skilled jobs. 416.964(b)(3). Fourth, the job requirements listed in the *DOT* represent the "*maximum* requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 004p, at *3 (emphasis added). "A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the *DOT*." *Id.* That is exactly what the VE did in this case.

Further, while Plaintiff's counsel questioned the VE at length regarding the physical requirements of the proposed jobs, he did not challenge the VE's finding that an individual with a limited education would be able to perform any of those positions (Tr. 54-55). As such, Plaintiff's argument regarding the VE's testimony is waived. *See Robilliard v Comm'r of Soc Sec*, 2020 WL 6588383, at *6 (E.D. Mich., October 20, 2020)(Grand, M.J.), report and recommendation adopted, 2020 WL 6585588 (E.D. Mich., November 10, 2020); *McCarley v. Berryhill*, 2018 WL 1477668, at *2 (E.D. Mich. Mar. 27, 2018)(Levy, J)(same).

In closing, my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's physical and mental conditions.  Nonetheless, because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen, supra*.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 17] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 13] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which

it pertains.  Not later than 14 days after service of an objection, the opposing party must

file a concise response proportionate to the objections in length and complexity.  The

response must specifically address each issue raised in the objections, in the same order

and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*


                                              s/R. Steven Whalen
                                              R. Steven Whalen
                                              United States Magistrate Judge

Dated: February 28, 2021


## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was sent to parties of record on February 28, 2021 electronically and/or by U.S. mail.


                                              s/Carolyn M. Ciesla
                                              Case Manager